IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| In re: | Chapter 7 |
| Agustine Huerta, Jr., | Case No. 19-24956-kmp |
| Debtor. | |

**MOTION OF FIFTH THIRD BANK
FOR ABANDONMENT AND RELIEF FROM THE AUTOMATIC STAY**

Fifth Third Bank, its successors and/or assignees (hereinafter collectively, and at all times material hereto, the "movant"), through its attorneys, Cummisford, Acevedo & Associates, LLC, hereby moves the court for an order granting relief from the automatic stay pursuant to 11 U.S.C. §362(d) and abandonment pursuant to 11 U.S.C. §554(b), and, in support of said motion, alleges as follows:

1. That on or about May 19, 2017, the debtor, Agustine Huerta, entered into a Motor Motorcycle Consumer Simple Interest Installment Sale and Security Agreement (hereinafter, the "Contract") with Road Track and Trail LLC. The Contract was subsequently assigned to MB Financial Bank ("MB"). MB was acquired by the movant on or about May 3, 2019. A copy of the FDIC BankFind screen print, Contract, Lien and Title Information and NADA Used Car Guide screen print are attached hereto, and their contents are incorporated herein by reference.

**Drafted by:**
Attorney Michael Acevedo
Cummisford, Acevedo & Associates, LLC
7071 S. 13th Street, Suite 100
Oak Creek, WI 53154
Office: 414-761-1700
Fax: 414-255-3008

1

2. That pursuant to the terms of the Contract, the debtor agreed to make 75 monthly payments of one hundred twenty-five dollars and six cents ($125.06) starting on July 3, 2017 and each month thereafter in exchange for ownership rights to the 2006 Harley Davidson FLHTCI, VIN: 1HD1FFW186Y607620 (hereinafter, the "motorcycle").

3. That the movant holds a properly perfected security interest in the motorcycle.

4. That the debtor intends to surrender the motorcycle.

5. That the debtor's intent to surrender the motorcycle constitutes "cause" for terminating the automatic stay under 11 U.S.C. §362(d)(1).

6. That the rough trade-in value of the motorcycle according to the NADA used car guide screen print is $4,400.00.

7. That the total debt as of August 6, 2019 is $6,641.48.

8. That pursuant to 11 U.S.C. §362(d), the movant is not adequately protected and relief from the automatic stay is appropriate in that the interest of the movant would be irreparably harmed by continuation of the automatic stay.

9. That the motorcycle is burdensome and of inconsequential value and benefit to the bankruptcy estate. The trustee should be ordered to abandon the estates' interest, if any, in the motorcycle pursuant to 11 U.S.C. §554(b).

10. That the provisions of Bankruptcy Rule 4001(a)(3) should be waived.

WHEREFORE, the movant requests that the automatic stay as it pertains to the debtor and the encumbered motorcycle be lifted pursuant to 11 U.S.C. §362(d), that the trustee be ordered to abandon the estate's interest in the motorcycle pursuant to 11 U.S.C. §554(b), that any order entered pursuant to this motion be effective immediately upon its entry and for such further relief as may be just and equitable.

Dated at Oak Creek, Wisconsin this 9th day of August, 2019.

Cummisford, Acevedo & Associates, LLC
Attorneys for Fifth Third Bank

*Michael Acevedo*
Michael Acevedo, #1022634

Pursuant to the Fair Debt Collection Practices Act (15 U.S.C. §1692), we are required to state that we are attempting to collect a debt on our client's behalf, and any information we obtain will be used for that purpose.

3

## MB Financial Bank, National Association (FDIC # 3628)

Inactive as of May 4, 2019

## Merged or acquired without government assistance

Data as of: July 31, 2019

MB Financial Bank, National Association is no longer doing business under that name because it has been merged or acquired without government assistance. See the successor institution, Fifth Third Bank (FDIC #: 6672)

| | |
|---|---|
| FDIC Certificate#: | 3628 |
| Headquarters: | 800 West Madison Street<br>Chicago, IL 60607<br>Cook County |
| Established: | May 6, 1933 |
| Insured: | January 1, 1934 |
| Bank Charter Class: | National Bank |

Contact the FDIC about:
MB Financial Bank, National Association or Fifth Third Bank

Locations    History    Identifications    Financials    Other Names / Websites

**Location information is not available for inactive or renamed banks**

[Prepaid Finance Charge Not Included]

**MOTOR VEHICLE CONSUMER SIMPLE INTEREST INSTALLMENT SALE AND SECURITY AGREEMENT**
(Do Not Use For A Residential Dwelling)

Boxes Checked Are Applicable.
Boxes Not Checked Are Inapplicable.

CONSUMER
W.B.A. 431S(B) (2/27/12)
©Wisconsin Bankers Association 2012

## 1. CREDIT SALE AGREEMENT

**Goods Sold and Credit Request.** I purchased from the undersigned Seller ("Seller") at the price and on the terms of a separate purchase agreement, the following goods, and I acknowledge receipt of them. In satisfactory condition. I request that the sale be financed on the terms of this Agreement and agree that all terms and conditions of the purchase agreement, other than financial terms and conditions, survive the execution of this Agreement. I agree to pay to Seller the Amount Financed shown in Section 3 below, plus Finance Charge according to the Payment Schedule shown in Section 3 below. Finance Charge is figured on a daily basis by applying the Annual Percentage Rate disclosed in Section 3 below to the unpaid part of the Amount Financed until the final scheduled maturity date.
☐ If checked here, and I do not pay the unpaid balance in full by the final scheduled maturity date, Seller will apply and I agree to pay interest at a post maturity rate of _____% per year on my outstanding balance until paid in full. Payments shall be applied (to the extent not prohibited by the Wisconsin Consumer Act) in such order as Seller elects to charges and amounts due under this Agreement. Amounts disclosed in Sections 2 and 3 are computed on the assumption that all installments will be paid when due and that my actual Finance Charge, Total Sale Price and Total of Payments may be more than the disclosed amount if I make payments late or for less than the scheduled amount.

| NEW OR USED | YEAR | NO. CYL. | MAKE/TRADE NAME | BODY STYLE (IF TRUCK, TONS CAPACITY) | MODEL | SERIAL NUMBER OR IDENTIFICATION NUMBER |
|---|---|---|---|---|---|---|
| USED | 2006 | 0 | HARLEY DAVIDSON | MC | FLHTCI | 1HD1FFW186Y607620 |

If applicable, titled or to be titled in name of __AGUSTINE HUERTA__

**Late Charge and Other Charges.** I agree to pay the Late Charge shown in Section 3 below. If Seller charges me interest after the final scheduled maturity date, I will not pay any late charge on the final scheduled payment amount. I also agree to pay a charge of $ __15.00__ as permitted under §422.202(1)(d), Wis. Stats., for each check presented for payment under this Agreement which is returned unsatisfied.

## 2. ITEMIZATION OF AMOUNT FINANCED

(a) Cash Price
  (including $ _____ BTCH 0.00 N/A SV/A ............................................. (a) $ 6,586.00
  to N/A for X N/A
(b) Trade-In: Year N/A Make N/A Model N/A
  Allowance $ N/A − Lien/Lease Payoff $ N/A
  Net Trade-in Value of ............................................................................................... (b) $
(c) Total Cash Received $ 0.00 (includes factory or manufacturer rebate of $ N/A ) ... (c) $ 0.00
(d) Total Downpayment: Cash $ 0.00 + Total Net Trade In Value $ 0.00
  (if negative, enter "0" and see line (f)(4) below) = Total Downpayment of ........................... (d) $
(e) Unpaid balance of the cash price (a − d) ........................................................... (e) $ 6,586.00
(f) Amounts paid to others on my behalf (Seller may keep a portion of these amounts):
  (1) To public officials for:
    Sales Tax ................................................................................ $ 362.35
    Filing Fees (Notation and Release of Lien) ........................................ $ 0.00
    Title Application, Transfer & Registration ......................................... $ 110.50
  (2) To property insurance company for coverages checked
    below (actual cash value) .......................................................... $ N/A
    $ _____ Deductible Comprehensive
    $ _____ Deductible Collision
    ☐ Fire, Theft and Combined Additional Coverage
  (3) To liability insurance company __CLASSIC GAP__ ............................ $ 499.00
  (4) To _____ for prior credit or lease balance ........................ $ 0.00
  (5) To __FIRST EXTENDED__ for __SERVICE CONTRACT__ ........ $ 0.00
  (6) To __POWER GUARD__ for __TIRE PROTECTION__ ............. $ 0.00
  [Subtotal for computing credit insurance premium
  e + f(1) through (6) is $ __7,559.85__ ]
  (7) To credit life insurance company ................................................. $
  (8) To credit accident and sickness insurance company .......................... $
  Total Amount Paid to Others ............................................................. (f) $ 971.85
(g) Amount Financed (e + f) ............................................................................... (g) $ 7,559.85
(h) Finance Charge ........................................................................................... (h) $ 1,819.65
(i) Total of Payments (g + h) ............................................................................... (i) $ 9,379.50
(j) Total Sale Price (d + i) ................................................................................... (j) $ 9,379.50

## 3. TRUTH IN LENDING DISCLOSURES

SEE REVERSE SIDE FOR ADDITIONAL NOTICE

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| The cost of my credit as a yearly rate. | The dollar amount the credit will cost me. | The amount of credit provided to me or on my behalf. | The amount I will have paid after I have made all payments as scheduled. | The total cost of my purchase on credit, including my downpayment of $ 0.00 |
| 6.990 % | $ 1,819.65 | $ 7,559.85 | $ 9,379.50 | $ 9,379.50 |

My Payment Schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 75 | $ 125.06 | MONTHLY BEGINNING 07-03-17 |
|  | $ |  |

**Security.** I am giving a security interest in the goods being purchased.
**Late Charge.** If a payment is not paid on or before the 10th day after its due date, I will be charged $ __10.00__ or __5.00__ % of the unpaid amount, whichever is less.
**Prepayment.** If I pay off early, I will not have to pay a penalty.
I should see my contract documents for any additional information about nonpayment, default and any required repayment in full before the scheduled date.

## 4. SECURITY AGREEMENT
I grant to Seller a security interest in the goods described in Section 1 above, and all accessions to and proceeds of such goods ("Collateral"). The Collateral secures performance of all my obligations in this Agreement and all extensions, modifications and renewals of them ("Obligations").

## 5. COVENANTS
(a) **Ownership, Purpose and Use:** Acting alone, I may grant a security interest in the Collateral. The Obligations under this Agreement are incurred and the Collateral is acquired primarily for personal, family or household purposes. I agree that the Collateral will not be used as a residential dwelling.
(b) **Title.** Vehicle will be ☒ titled in Wisconsin ☐ titled in _____ ☐ not titled.
(c) **Location.** The Collateral will be kept at the address below Section 7, or if not, at _____
  _____ (NO. AND STREET) _____ (CITY OR TOWN) _____ (STATE)
  Such location shall not be changed without providing at least 30 days prior written notice of the change to Seller, but I intend that the Collateral, wherever located, is covered by this Agreement.
(d) **Marital Information. For Wisconsin resident only:** I am ☐ married ☒ unmarried ☐ legally separated. If I am married and my spouse is not signing below the name of my spouse is _____ and my spouse resides at ☐ the address shown below Section 7 or at _____
(e) **Marital Purpose.** If I am a married Wisconsin resident, the obligation evidenced by this Agreement is being incurred in the interest of my marriage or family.
  X __N/A__ CUSTOMER
(f) **Name and Address.** My legal name is as set forth below Section 7. The address of my principal residence is as set forth below Section 7. I will not change my legal name or address without providing at least 30 days prior written notice of the change to Seller.
(g) **Additional Covenants.** I shall observe and comply with the Additional Provisions on the reverse side of this Agreement and shall not permit an event of default to occur.

## 6. INSURANCE AND DEBT CANCELLATION COVERAGE

(a) CREDIT LIFE AND CREDIT ACCIDENT AND SICKNESS INSURANCE ARE NOT REQUIRED TO OBTAIN CREDIT, AND WILL NOT BE PROVIDED UNLESS I SIGN BELOW AND AGREE TO PAY THE ADDITIONAL COST. My decision to buy or not buy such insurance will not be a factor in the credit approval process. I want the insurance at the cost(s) shown below for the term of the Agreement (or _____ months, whichever is less) subject to terms and conditions of separate policy or certificate of insurance.
Credit Life Insurance $ __0.00__      Credit Accident & Sickness Insurance $ __0.00__
I want credit life insurance.          I want credit accident and sickness insurance.
X __N/A__                               X __N/A__
   INSURED                                 INSURED
X __N/A__                               X
   JOINT INSURED                             JOINT INSURED

(c) I MAY OBTAIN PROPERTY AND LIABILITY INSURANCE FROM ANYONE I WANT THAT IS REASONABLY ACCEPTABLE TO SELLER. If I get the insurance from Seller, I will pay $ __N/A__ for an estimated term __N/A__ months.
(d) WARNING: Unless an amount appears on line (f)(3) of Section 2, insurance coverage hereunder is not public liability insurance and does not protect the driver of the vehicle from liability for damages resulting from negligent use of the vehicle.

(b) DEBT CANCELLATION COVERAGE, SPECIFICALLY CALLED GUARANTEED AUTOMOBILE PROTECTION ("GAP"), IS NOT REQUIRED TO OBTAIN CREDIT AND GAP WILL NOT BE PROVIDED UNLESS I ELECT SUCH COVERAGE AND SIGN AND AGREE TO PAY THE ADDITIONAL COST. I elect GAP and agree to pay the cost shown below for the original term of this Agreement (or __75__ months, whichever is less), subject to terms and conditions of the separate GAP election or description of coverage. GAP coverage cost is $ __499.00__
I acknowledge receipt of the description of GAP coverage separately provided to me.
☒ I want GAP coverage.
X __N/A__ CUSTOMER        X _____ CUSTOMER

## 7. PERSONS BOUND
"I", "me" and "mine" includes each customer who signs this Agreement and our obligations are joint and several, except that _____ _____ signs below solely to grant a security interest in the Collateral. This Agreement benefits Seller, its successors and assigns, and binds me and my heirs, personal representatives, successors and assigns. This Agreement includes the Additional Provisions on the reverse side of this Agreement. I have received a completed copy of this Agreement.
**The Annual Percentage Rate may be negotiable with Seller. Seller may assign this Agreement and retain its right to receive a part of the Finance Charge.**

NOTICE TO CUSTOMER
(a) DO NOT SIGN THIS BEFORE YOU READ THE WRITING ON THE REVERSE SIDE, EVEN IF OTHERWISE ADVISED.
(b) DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES.
(c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.
(d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF FINANCE CHARGE.

Dated __MAY 19, 2017__

__ROAD TRACK AND TRAIL LLC__ (SEAL)
SELLER
By _____
AUTHORIZED SIGNATURE

Seller's Address: __W228 S6932 ENTERPRISE DRIVE__
__BIG BEND WI 53103__

This Agreement may be assigned to ("Assignee"): __MB FINANCIAL BANK__
__6111 N RIVER ROAD ROSEMONT IL 60018__

X _____ CUSTOMER __AGUSTINE HUERTA__ (SEAL)

X _____ (SEAL)
CUSTOMER
N/A

Customer's Address: __118 FRANKLIN ST__
SEE SECTIONS 5(c), (d) and (f)
__DELAVAN WI 53115__
*Type or print name signed above.

PART 3 - DUPLICATE BANK COPY - NOT ASSIGNABLE

WBA 431 SB Consumer (2/27/12)

**B. ADDITIONAL PROVISIONS**

**(a) Maintenance of Collateral.** I shall maintain the Collateral in good condition and repair and not permit its value to be impaired; keep it free from all liens, encumbrances and security interests prior in right to those of Seller; defend it against all claims and legal proceedings by persons other than Seller; pay and discharge when due all taxes, license fees, levies and other charges upon it; not sell, lease or otherwise transfer or dispose of it or permit it to become a fixture or accession to other goods except as specifically authorized in this Agreement or in writing by the Seller; and not permit it to be used in violation of any applicable law, regulation or policy of insurance, the violation of which could result in loss of or damage to any Collateral or impairment of the insurance on it. Loss of or damage to the Collateral shall not release me from any of the Obligations.

**(b) Insurance.** If the Collateral is of a value of $800 or more, or the amount financed (exclusive of insurance charges) is $800 or more, I shall keep all Collateral and Seller's interest in it, insured for all risks of physical damage to or loss of the Collateral throughout the term of this Agreement and any renewals, extensions or modifications of it under policies with such provisions, for such amounts (not more than the value of the Collateral or the aggregate outstanding balance of the Obligations, whichever is less) and by such insurers as shall be reasonably satisfactory to Seller from time to time. I shall furnish satisfactory evidence of such insurance to Seller. Subject to Seller's satisfaction, I am free to select the insurance agent or insurer through which such insurance is obtained by me. I assign (and direct any insurer to pay) to Seller the proceeds of all such insurance and any premium refund and authorize Seller to endorse in my name any instrument for such proceeds or refunds and, at the option of Seller, to apply such proceeds and refunds to any unpaid balance of the Obligations, whether or not due, and/or to restoration of the Collateral, returning any excess to me. Seller is authorized, in my name or otherwise, to make, adjust and/or settle claims under any credit insurance financed by Seller and any insurance on the Collateral, or cancel the same after the occurrence of an event of default and giving any prior notice required by the Wisconsin Consumer Act. If I fail to keep any required insurance on the Collateral, Seller may purchase such insurance for me, such insurance may be acquired by Seller solely to protect the interest of Seller (and will not cover my equity in the Collateral), and my obligation to repay Seller shall be in accordance with Section B(e).

**(c) Inspection of Collateral.** Seller is authorized to examine the Collateral wherever located at any reasonable time or times; and I shall assist in making any such inspection.

**(d) Maintenance of Security Interests.** To the extent not prohibited by law, I shall pay all expenses and, upon request, deliver any document and take any action reasonably deemed advisable by Seller to preserve the Collateral or to establish, evidence, determine and maintain priority of, perfect, continue perfected, terminate and/or enforce Seller's interest in it or rights under this Agreement. I authorize Seller to file Uniform Commercial Code financing statements describing the Collateral and amendments to such financing statements and ratify any such financing statement or amendment filed prior to the date of this Agreement.

**(e) Authority of Seller to Perform for Me.** Seller may perform or cause to be performed any of my duties set forth in this Agreement with respect to preserving or insuring the Collateral, including without limitation signing my name or paying any amount so required, if I fail to perform any of such duties after the written notice to me and a reasonable opportunity for me to perform, if any, required by law. The costs of Seller's performance shall be payable by me upon demand and shall bear Finance Charge from the date of expenditure by Seller to the date of payment by me at the Annual Percentage Rate disclosed in Section 3 on the front of this Agreement.

**(f) Ability to Pay.** I shall not take any action or permit any event to occur which materially impairs my ability to pay any of the Obligations when due. Such events may include, without limitation, the fact that I, my spouse or any surety of the Obligations dies, changes marital status or domicile or becomes insolvent or the subject of bankruptcy or other insolvency proceedings.

**(g) Default.** Upon the occurrence of any one or more of the following Events of Default:
  (1) **Payments.** (i) If the interval between scheduled payments is 2 months or less, to have outstanding an amount exceeding one full payment which has remained unpaid for more than 10 days after the due dates or the failure to pay the first or last payment within 40 days after its due date; (ii) if the interval between scheduled payments is more than 2 months, to have all or any part of one scheduled payment which has remained unpaid for more than 60 days after its due date; or (iii) the failure to pay the only scheduled payment within 40 days after its due date;
  (2) **Nonperformance.** I fail to observe or perform any of my other covenants or duties contained in this Agreement if the failure materially impairs the condition, value or protection of or Seller's right in any Collateral, or materially impairs my ability to pay any of the Obligations when due; or
  (3) **False Statement.** I made a material false statement in my credit application to Seller that preceded this Agreement;
Seller shall have all of the rights and remedies for default provided by applicable law and this Agreement. With respect to such rights and remedies:
  (4) **Acceleration.** Each Obligation as to which an Event of Default has occurred shall, at the option of Seller and without further notice or demand, become immediately payable unless notice to me and an opportunity to cure is required by §425.105, Wis. Stats. and, in that event, such Obligation shall become payable if such default is not cured as provided in that statute, within 15 calendar days after mailing of such notice to me;
  (5) **Repossession.** Unless the Collateral is removed from Wisconsin under §421.201(5), Wis. Stats., abandoned under §425.207(2), Wis. Stats., or Seller has perfected its right to take possession of the Collateral consisting of a motor vehicle under §425.206(1)(d), Wis. Stats., I have a right to a court hearing on the issue of default before any repossession of any Collateral, but by surrendering the Collateral, I waive such right. Seller shall have the right to take possession of the Collateral consisting of a motor vehicle under §425.206(1)(d), Wis. Stats., provided Seller has given me, by mail, a notice containing all of the information required under §425.205(1g)(a), Wis. Stats., and I have not made a statement to Seller either that I am not in default under this Agreement or that I object to Seller's right to take possession of the Collateral and I made a demand by notifying Seller in writing within 15 days after Seller gives such notice to me that Seller proceed in court. Seller shall also have the right to take possession of the Collateral if it is removed from Wisconsin under §421.201(5), Wis. Stats., or abandoned under §425.207(2), Wis. Stats. Seller may take possession of the Collateral under these circumstances only if it does not commit a breach of peace or enter a dwelling used by me as a residence except at my voluntary request. Seller may also take possession of the Collateral if I have surrendered the Collateral to Seller or Seller has obtained judgment in a proceeding for recovery of the Collateral.
  (6) **Assembling Collateral.** After Seller has the right to possession of Collateral, Seller may require me to assemble the Collateral and to make it available to Seller at a place designated by Seller which is reasonably convenient to both parties;
  (7) **Notice of Disposition.** Notice, when required by law, mailed to me at least 10 calendar days (counting the day of mailing) before the date of a proposed disposition of the Collateral is reasonable notice;
  (8) **Expenses and Application of Proceeds.** Seller may recover from me and the proceeds of disposition any expenses incurred in taking possession, holding, preparing for disposition and disposing of the Collateral, including reasonable attorneys' fees and court costs, to the extent not prohibited by the Wisconsin Consumer Act, if applicable. Seller is under no obligation to clean up or otherwise prepare the Collateral for sale. After deduction of allowed expenses, Seller shall apply the proceeds of disposition to the Obligations in such order and amounts as it elects, subject to the Wisconsin Consumer Act, if applicable; and
  (9) **Waiver.** Seller may waive any default without waiving any other subsequent or prior default by me.

**(h) Partial Prepayments.** Partial prepayments shall be applied by Seller or its assignee to the payment of unpaid principal owed on this Agreement at the time of the partial prepayment and all remaining scheduled payments due under this Agreement shall continue to be paid when due, unless I instruct Seller or its assignee otherwise.

**(i) Interpretation.** The validity, construction and enforcement of this Agreement are governed by the internal laws of Wisconsin, except that recovery of Collateral shall be governed by the law of the state in which the Collateral is located at the time of recovery to the extent authorized by §421.201(5), Wis. Stats. All terms not otherwise defined have the meanings assigned to them by the Wisconsin Uniform Commercial Code and the Wisconsin Consumer Act. All references in this Agreement to sections of the Wisconsin Statutes are to those sections as they may be renumbered from time to time. Unless otherwise required by the Wisconsin Consumer Act, invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provisions.

**(j) Miscellaneous.** Without affecting my liability under this Agreement, Seller may, without notice, grant renewals or extensions; accept partial payments, release or impair any security interest or lien in collateral security for the Obligations or agree not to sue any party liable on this Agreement. Presentment, protest, demand and notice of dishonor are waived. I acknowledge that Seller has not made any representations or warranties with respect to, and that Seller does not assume any responsibility to me for, the collectability or enforceability of this Agreement or the financial condition of any of us. Each of us has independently determined the collectability and enforceability of this Agreement. This Agreement is intended by Seller and me as a final expression of this Agreement and as a complete and exclusive statement of its terms, there being no conditions to the enforceability of this Agreement. This Agreement may not be supplemented or modified except in writing. This Agreement benefits Seller, its successors and assigns, and binds me and my heirs, personal representatives, successors and assigns.

**(k) Defenses Against Assignee.**

---
**NOTICE**

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

---

**(l) TELEPHONE MONITORING AND CALLING:** I agree Seller or its assignee may monitor and record telephone calls regarding my account to assure the quality of service provided by Seller or its assignee. In order for Seller or its assignee to service my account or to collect any amounts I may owe, and subject to applicable law, I agree that Seller or its assignee may from time to time make calls and send text messages to me using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number I provide to Seller or its assignee in connection with my account, including a mobile telephone number that could result in charges to me.

**NOTICE OF ASSIGNMENT**

_____ to _____

(ASSIGNEE'S NAME)

Address: _____

This Agreement and the rights to payment have been assigned to the Assignee shown above. Please make all future payments to that Assignee at the address shown.


Collateral Management Services
9750 Goethe Road | Sacramento, CA 95827
www.dealertrack.com

# Fifth Third Bank

## Lien and Title Information

### Account Information

| | | | |
|---|---|---|---|
| Account Number | REDACTED | Financed Date | 7/29/2019 |
| Loan Number | REDACTED | Perfected Date | 7/29/2019 |
| Branch | | Payoff Date | |
| Borrower 1 | HUERTA AGUSTINE JR | Dealer ID | |
| Borrower 2 | | Dealer | |
| Borrower Address | 118 FRANKLIN ST<br>DELAVAN, WI 53115-1002 | Dealer Address | |

### Lienholder

| | |
|---|---|
| ELT Lien ID | REDACTED |
| Lienholder | MB Financial Bank, N.A. |
| Lienholder Address | 6111 N. River Road<br>Rosemont, IL 60018 |
| Lien Release Date | |

### Vehicle and Titling Information

| | | | |
|---|---|---|---|
| VIN | 1HD1FFW186Y607620 | Issuance Date | 5/31/2017 |
| Title Number | 17151CB930163 | Received Date | 5/2/2019 |
| Title State | WI | ELT/Paper | ELECTRONIC |
| Year | 2006 | Odometer Reading | 0 |
| Make | HD | Branding | |
| Model | | | |
| Owner 1 | HUERTA AGUSTINE JR | | |
| Owner 2 | | | |
| Owner Address | 118 FRANKLIN ST<br>DELAVAN, WI 53115-1002 | | |

**Printed:** Wednesday, July 31, 2019 6:48:17 AM PST

# 2006 Harley-Davidson FLSTCI Heritage Softail Classic

| | |
|---|---|
| **Vehicle Type** | Motorcycles |
| **Manufacturer** | Harley-Davidson |
| **Year** | 2006 |
| **Type** | Cruisers |
| **Model** | FLSTCI Heritage Softail Classic |
| **Piston Displacement (CCs)** | 1450 |
| **Stroke** | 4 |
| **Cylinders** | 2 |
| **Speeds** | 5 |
| **Manufacturer's Reported Weight** | 696 lbs |

| | Suggested List | Rough Trade-In/Wholesale | Clean Trade-In/Wholesale | Average Retail |
|---|---|---|---|---|
| **BASE PRICE** | $18,205 | $4,400 | $5,260 | $5,940 |
| **TOTAL PRICE** | $18,205 | $4,400 | $5,260 | $5,940 |

## Vehicle Notes

**Manufacturer Note:**
Due to custom features such as chrome, paint, engine modifications, and market conditions, some values may increase by as much as 10% -30%.

## Value Explanations

The values listed are a guide for appraisal purposes only. The values are a reflection of the unit's respective popularity. It may be necessary to adjust listed values to meet market conditions of your area. Used units in above average condition could be worth more than average retail value.

**Suggested List**
The manufacturer's (distributor's) highest suggested list price in the U.S.A. when the unit was new. Unless indicated, the suggested list price does not include destination charges, dealer set-up, state or local taxes, license, tags or insurance.

**Rough Trade-In/Wholesale**
This figure reflects the wholesale value of a used unit in need of repairs and refurbishing.

**Clean Trade-In/Wholesale**
This figure reflects the clean wholesale value of a clean used unit "ready for resale".

**Average Retail**
(High Book) This figure reflects the average retail value of a used unit "ready for resale". Units in excellent or prime condition may increase value 10% - 15%.